```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRY ELIZABETH SILVA,              :        CIVIL ACTION
     Plaintiff,                     :
                                    :
     v.                             :
                                    :
MID ATLANTIC MANAGEMENT CORP,       :
CANTERBURY WOODS HOMEOWNERS         :
ASSOC., FORBES, BENDER,             :
PAOLINO & DISANTI, P.C. and         :
ALEXANDER D. DISANTI, ESQUIRE,      :
     Defendants.                    :        No. 02-3579
```

**MEMORANDUM AND ORDER**

**J. M. KELLY**, J.                                    **JUNE   , 2003**

Presently before the Court is a Motion for Summary Judgment filed by Defendants Mid-Atlantic Management Corporation ("Mid-Atlantic"), Canterbury Woods Homeowners Association ("Canterbury Woods"), Forbes, Bender, Paolino & DiSanti, P.C., ("Forbes"), and Alexander D. DiSanti, Esquire ("DiSanti") (collectively, the "Defendants") challenging allegations of federal and state fair debt collection practices violations filed by Plaintiff Terry Elizabeth Silva ("Silva"). First, Defendants contend that defendant law firm Forbes does not regularly engage in debt collection practices and did not seek to collect a debt allegedly owed by Silva using non-judicial means. Thus, they argue that Forbes does not fall within the definition of a "debt collector" under either the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., or the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 Pa. Cons. Stat. §

2270.0, et seq.  Second, Defendants argue that Silva's instant claims were already adjudicated and ultimately dismissed by the Delaware County Court of Common Pleas in a prior proceeding and consequently, are now barred by res judicata and collateral estoppel doctrines.  For the following reasons, Defendants' Motion for Summary Judgment is **DENIED IN PART and GRANTED IN PART**.

## I. BACKGROUND

The instant dispute arises from late fees and attorney's costs imposed by Defendants pursuant to the rules and regulations established by Canterbury Woods in connection with its townhouse development operations.  Silva owns a unit in the Canterbury Woods townhouse development in Delaware County, Pennsylvania.  Upon purchasing the unit, Silva entered into a contract with Canterbury Woods titled the "Declaration of Covenants, Conditions, Easements and Restrictions of Canterbury Woods" (the "Declaration").  (Silva Compl. Ex. 1.)  The Declaration obligated Silva to pay Canterbury Woods an $85.00 monthly association fee to cover the costs of providing and maintaining common townhouse development services.  (Id.)  The association fee is due on the first day of each month, although residents are provided a 10-day grace period for payment.  If the association fee was not received within the first 10 days of each month, Canterbury Woods

may assess a late fee.  (<u>Id.</u>)

    Although she would mail the monthly association payment in advance of its due date, Silva contends that from July 11, 2000 until the present, Canterbury Woods and Mid-Atlantic, a debt collector, improperly assessed monthly late fees against her. After a late fee was assessed, these defendants would continue to impose late fees on subsequent payments of the association fee if the prior late fee was not paid.  When Silva wrote to Mid-Atlantic to request an explanation of these fees or other charges, Mid-Atlantic did not respond or investigate Silva's request.  After Silva refused to pay the alleged improper late fees, on July 18, 2000, Mid-Atlantic attorney DiSanti and his law firm Forbes filed a claim in the Delaware County Court of Common Pleas on behalf of Canterbury Woods and Mid-Atlantic for the collection of assessments, late fees and attorney's fees owed by Silva.  (Defs. Mot. for Summ. J. Ex. B.)  The Court of Common Pleas ultimately found in favor of Canterbury Woods and, by order issued on December 5, 2001, awarded it $2,652.50 in damages. (Defs. Mot. Ex. G.)  On June 4, 2002, Silva filed suit in this Court claiming that Defendants violated federal and state debt collection laws and a state consumer protection act in connection with their fee assessment and debt collection practices.

## II.  **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Thus, this Court is required, in resolving a motion for summary judgment under Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the non-movant's favor.  Id. at 255.  Furthermore, while the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### III. DISCUSSION

Defendants present essentially two challenges to Silva's federal and state law claims set forth in her Complaint.[1]  First, Defendants contend that Forbes, a law firm retained by Mid-Atlantic, is not a debt collector within the scope of either the FDCPA or the PFCEUA since it did not collect amounts owed by Silva using non-judicial means and does not regularly engage in debt collection practices as part of its general business.  Second, Defendants claim that all Silva's claims against Mid-Atlantic, Canterbury Woods and Forbes were heard and ultimately denied by the Delaware County Court of Common Pleas and are now barred by res judicata and collateral estoppel doctrines.  We discuss each of Defendants' claims in turn.

**A. Fair Debt Collection Practices Act**

Defendants contend that Forbes does not regularly engage in debt collection practices and therefore is not a debt collector

---

[1]  In addition to these challenges, Defendants argue that Alexander A. DiSanti must be dismissed from this suit because Silva intended to name his son, Alexander D. DiSanti as a defendant instead.  On May 21, 2003, this Court permitted Silva to file an Amended Complaint naming Alexander D. DiSanti as a defendant and replacing all references to his father Alexander A. DiSanti, an attorney who Silva mistakenly listed as a defendant. Accordingly, since Alexander A. DiSanti is no longer a party to this action, we deny his portion of Defendants' Motion for Summary Judgment as moot.

within the purview of the FDCPA.  Defendants claim that since Forbes' debt collection practices consist of approximately 10 individual or homeowners debts per year and yield less than one percent (1%) of the firm's gross revenues, it does not regularly engage in debt collection activity as required by the FDCPA. (Defs. Mot. p. 2.)  Silva argues that Defendants misinterpret the term "regularly" as used in the FDCPA and ignore precedent established by the United States Court of Appeals for the Third Circuit that determined that law firms collecting debts "incidental[] to the general practice of law" are debt collectors under the FDCPA and are bound by its provisions.  Under this standard, Silva argues that Forbes, by consistently accepting approximately 10 debt collection matters every year for the last several years, regularly engages in debt collection practices even though these services may amount to a small fraction of the firm's total activity.  Thus, Silva contends that Forbes' debt collection practices are regular and therefore come within the FDCPA's definition of debt collector.

Enacted in 1977, the FDCPA protects debtors from "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  A "debt collector," as

defined in the FDCPA, includes:

> [A]ny person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owned or due another.

15 U.S.C. § 1692a(6).  Although the FDCPA, at one time, did not apply to attorneys acting on behalf of their clients, Congress repealed this provision when it discovered that an increasing number of attorneys were collecting debts on their clients' behalf.  Dutton v. Wolpoff & Abramson, 5 F.3d 649, 655 (3d Cir. 1993); Crossley v. Lieberman, 868 F.2d 566, 569 (3d Cir. 1989). Thus, attorneys who regularly engage in debt collection practices, apart from their legal representation, are covered under the FDCPA.  Crossley, 868 F.2d at 569; Oldroyd v. Associates Consumer Discount Co., 863 F. Supp. 237, 241 (E.D. Pa. 1994); Woodside v. New Jersey Higher Educ. Assistance Authority, No. Civ. A. 92-4581, 1993 U.S. Dist. LEXIS 5126, at *14 (E.D. Pa. Mar. 1, 1993).  A Senate report addressing the FDCPA suggests:

> The primary persons intended to be covered [under the FDCPA] are independent debt collectors.  The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business.

S. Rep. No. 95-382, reprinted in 1977 U.S.C.C.A.N. 1695, 1697-98. Since the FDCPA does not define the term "regularly" or offer factors to consider in determining whether a defendant's debt

collection practices fall within its provisions, a considerable amount of law has developed that addresses the proper interpretation of "regularly" under the FDCPA.  See generally Schroyer v. Frankel, 197 F.3d 1170 (6th Cir. 1999); Garrett v. Derbes, 110 F.3d 317 (5th Cir. 1997); Fox v. Citicorp Credit Services, 15 F.3d 1507 (9th Cir. 1994); Scott v. Jones, 964 F.2d 314 (4th Cir. 1992); see generally Michael A. Rosenhouse, What Constitutes "Debt Collector" for Purposes of Fair Debt Collection Practices Act (15 U.S.C.A. § 1692a(6), 173 A.L.R. Fed. 223 (2001).

Despite the extensive caselaw addressing the definition of "regularly" in the context of the FDCPA, Defendants cite only to Nance v. Petty, Livingston, Dawson & Devening, a case in another federal district court to support its claim.  881 F. Supp. 223 (W.D. Va. 1994).  In this decision, the Court viewed the defendant's volume of debt collection activity as the critical factor in determining whether a party regularly engaged in debt collection and concluded that the defendant attorney was not a debt collector since only .61% of his general practice and 1.07% of his cases, during a 17-month period, involved debt collection. Id. at 225.  Relying primarily on the volume of debt collection matters it accepted, Forbes contends that it does not regularly engage in debt collection practices because: (1) the firm's debt collection activity constitutes less than one percent (1%) of its

gross revenues over the past five years; (2) it does not represent any collection agencies; (3) its debt collection activity involved only approximately 10 individual or homeowner debts per year over the last couple of years; and (4) its debt collection practices represent less than one percent (1%) of its files.  (Defs. Mot. p. 2.)

Relying on authority set forth by the Third Circuit in Crossley v. Lierberman, 868 F.2d 566 (3d Cir. 1989), Silva argues that despite the meager revenue Forbes produces from the few debt collection matters it handles, its debt collection practices are regular under the FDCPA.  In Crossley, the Third Circuit quoted from an article that commented:

> Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those who collect on an occasional basis and the small law firm which collects debts incidentally to the general practice of law.

Id. at 569 (citing R. Hobbs, Attorneys Must Now Comply With Fair Debt Collection Law, Pa. J. L. Rptr., No. 46, p. 3 (Nov. 21, 1987)).  Under this language, Silva argues that Forbes, by handling approximately 10 debt collection matters each year for the past several years, engages in debt collection activities

"more than a handful of times per year," thus satisfying the "regularly" requirement under the FDCPA.  Although Forbes argues that its debt collection practices are not regular since they only amount to one percent (1%) of its total volume of cases and revenue, Silva contends that the word "regularly," as used in the FDPCA, is not synonymous with the word "substantially," and that Forbes' consistent practice of handling debt collection matters are evidence of its regular debt collection practices.

    Although we are hesitant to conclude that the article quoted in Crossley constitutes Third Circuit precedent, we nevertheless agree with Silva that Forbes regularly engaged in debt collection practices under the FDCPA by consistently accepting at least 10 debt collection matters every year.  Although Forbes' debt collection activity may not be substantial in relation to its general legal practice, this activity occurred consistently at least 10 times per year for several years.  We agree that "[d]ebt collection services may be rendered 'regularly' even though these services may amount to a small fraction of the firm's total activity."  Schroyer, 197 F.3d at 1174 (quoting Stojanovski v. Strobl & Manoogian, P.C., 783 F. Supp. 319, 322 (E.D. Mich. 1992)); see also Littles v. Lieberman, 90 B.R. 700, 707 (E.D. Pa. 1988) (concluding that FDCPA applies to attorneys "with a general practice including a minor but regular practice in debt collection").  Thus, under the caselaw established in this

10

jurisdiction, we are satisfied that Forbes regularly engaged in debt collection practices by participating in several debt collection matters each year for the last couple of years and, as such, is a debt collector within the purview of the FDCPA.

**B.  Pennsylvania Fair Credit Extension Uniformity Act**

Defendants next argue that Forbes is not a debt collector under the PFCEUA since it did not attempt to collect the debt owed to Defendants using non-judicial means and was involved only in the prosecution of the lawsuit against Silva on behalf of its clients. The PFCEUA states, in pertinent part, that an attorney is a debt collector "whenever such attorney attempts to collect a debt, as herein defined, except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment."  73 Pa. Cons. Stat. § 2270.3(3)(ii).  Silva does not dispute that Forbes was involved in the prosecution of the lawsuit in the Delaware County Court of Common Pleas, but contends that she is entitled to pursue, until the close of discovery, whether Forbes, apart from prosecuting Defendants' suit, further assisted Defendants in collecting the debt.

Although a court may "postpone ruling on a defendant's summary judgment motion if the plaintiff needs additional discovery to explore 'facts essential to justify the party's opposition,'" the time for discovery has expired and Silva does not request another

11

extension of the discovery deadlines this Court imposed and twice extended in response to her request.  Since the date for discovery has expired and Silva has not supplemented or amended her response to Defendants' Motion for Summary Judgment to include any additional information demonstrating that Forbes was involved in any further attempts to collect the disputed debt apart from prosecuting Defendants' suit, this Court must agree with Forbes that dismissal on this issue is warranted.  Although a court must view evidence in favor of the non-movant when resolving a motion for summary judgment, Silva fails to provide any evidence disputing the claim that Forbes was involved only in prosecuting the case against Silva despite the additional time for discovery this Court already granted her.  Thus, we find that Silva fails to demonstrate that Forbes is a debt collector under the PFCEUA and must, accordingly, grant Defendants' Motion for Summary Judgment as to this claim against defendant Forbes.

**C.  Applicability of Res Judicata and Collateral Estoppel Doctrines**

Defendants argue that since the Delaware County Court of Common Pleas already rendered a final determination as to claims that Silva sets forth in her Complaint filed in this Court, her instant suit against Canterbury Woods, Mid-Atlantic and Forbes is

barred by the doctrines of collateral estoppel and res judicata.[2] To support this claim, Defendants provide documentation showing that, on July 18, 2000, Defendants filed suit against Silva in the Delaware County Court of Common Pleas for $426.00 in homeowner fees owed to Canterbury Woods and $300.00 in attorney's fees that DiSanti and Forbes incurred in prosecuting this debt. (Defs. Mot. Exs. A & B.) In response to Defendants' suit, on April 5, 2001, Silva filed an Answer that included New Matter and a Counterclaim that sought to add Mid-Atlantic as a party and include allegations of violations under the FDCPA, PFCEUA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Defs. Mot. Ex. E.) On May 24, 2001, Canterbury Woods filed Preliminary Objections to Silva's Answer, New Matter and Counterclaim. On June 19, 2001, Mid-Atlantic also filed Preliminary Objections claiming that Silva could not procedurally join additional defendants by filing a counterclaim. In response to Mid-Atlantic's objection, on July 10, 2001, Silva filed a Joinder Complaint and/or Counterclaim wherein Silva sought to add these additional claims and join as defendants Mid-Atlantic and Forbes. (Defs. Mot. Ex. F.)

On August 23, 2001, Delaware County Court of Common Pleas Judge Harry J. Bradley ("Judge Bradley") issued an order sustaining

---

[2] DiSanti was not a party in the Delaware County Court of Common Pleas litigation and does not argue that Silva's claims against him in the present federal action are barred by either collateral estoppel or res judicata.

Defendants' Preliminary Objections and striking Silva's Joinder Complaint/Counterclaim "without prejudice to [Silva's] right to file an Amended Counterclaim and to properly join non-party additional Defendants in conformity with the applicable rules of civil procedure."[3]  (Silva Resp. Ex. 2.)  After Silva failed to appear for a scheduled arbitration hearing, the Court of Common Pleas entered judgment in favor of Mid-Atlantic and Canterbury Woods and awarded them $2,652.50 in damages.  (Defs. Mot. Ex. G.)

Defendants contend that the Court of Common Pleas already denied Silva's claims against Forbes and Mid-Atlantic under the FDCPA, PFCEUA and UTPCPL, which are the exact claims Silva includes in her Complaint filed in this Court and that her instant case is barred by collateral estoppel and res judicata doctrines.  Silva argues that since her motion to add additional parties and claims was denied without prejudice in the prior litigation, these claims were never fully heard or decided on the merits by the Court of Common Pleas, and therefore, are properly before this Court.

To demonstrate a viable collateral estoppel, or "issue preclusion," defense, a party must demonstrate that: (1) the issue

---

[3] Defendants did not mention or include Judge Bradley's August 23, 2001 order dismissing without prejudice Silva's Joinder Complaint/Counterclaim.  However, Silva includes this seemingly important piece of evidence in her response.  We can only view Defendants' omission as a mistake, but agree with Silva that without this order, this Court would be unable to fully understand the events occurring in the prior proceeding in the Delaware County Court of Common Pleas.

14

sought to be precluded is identical to that involved in the prior litigation; (2) the issue was fully litigated in the prior case; (3) a final and valid judgment was already reached on the issue; and (4) the determination of the issue was essential to the prior judgment. <u>Delaware River Port Authority v. Fraternal Order of Police</u>, 290 F.3d 567, 572 (3d Cir. 2002).  The UTPCPL claim and averments of Pennsylvania state and federal fair credit practices violations allegedly committed by Canterbury Woods, Mid-Atlantic and Forbes were averred by Silva in her Joinder Complaint/Counterclaim, but we find no evidence that these claims were "fully litigated" in the Delaware County Court of Common Pleas since Silva's Joinder Complaint/Counterclaim was "denied without prejudice."  Although the Court of Common Pleas ultimately entered judgment in favor of Canterbury Woods and Mid-Atlantic when Silva failed to appear for a scheduled arbitration, we are not presented with evidence demonstrating that these claims were heard by the Court of Common Pleas and thus find that the doctrine of collateral estoppel is not applicable.

For the same reason, we similarly find that Silva's instant claims are not defeated by the doctrine of res judicata.  To bar suit under the res judicata doctrine, a party must demonstrate that a final judgment on the merits was reached by another court involving: (1) "an identity of the thing sued upon; (2) an identity of the cause of action; (3) an identity of the persons and parties

15

to the action; and (4) an identity of the quality or capacity of the parties suing or sued." McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir. 1989) (citing Dunham v. Temple University, 432 A.2d 993, 999 (Pa. Super. Ct. 1981)).  Since we cannot determine that the Court of Common Pleas reached a final judgment on the claims set forth in Silva's Joinder Complaint/Counterclaim, we similarly find that the doctrine of res judicata does not bar Silva's instant suit against Canterbury Woods, Mid-Atlantic and Forbes.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY ELIZABETH SILVA, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| MID-ATLANTIC MANAGEMENT | : | |
| CORPORATION, CANTERBURY WOODS | : | |
| HOMEOWNERS ASSOCIATION, FORBES, | : | |
| BENDER, PAOLINO & DISANTI, P.C. | : | |
| and ALEXANDER D. DISANTI, | : | |
| ESQUIRE, | : | |
|     Defendants. | : | No. 02-CV-3579 |

**O R D E R**

**AND NOW**, this        day of June 2003, in consideration of the Motion for Summary Judgment filed by Defendants Mid-Atlantic Management Corporation ("Mid-Atlantic"), Canterbury Woods Homeowners Association ("Canterbury Woods"), Forbes, Bender, Paolino & DiSanti, P.C. ("Forbes") and Alexander D. DiSanti, Esquire ("DiSanti") (collectively, the "Defendants") (Doc. No. 13) and the Response of Plaintiff Terry Elizabeth Silva ("Silva") (Doc. No. 16) it is **ORDERED** that Defendants' Motion for Summary Judgment is **DENIED IN PART and GRANTED IN PART** to the extent that Silva's claim under the Pennsylvania Fair Credit Extension Uniformity Act against Defendant Forbes is dismissed.  All other claims averred in Silva's Complaint against Defendants withstand dismissal and remain

before this Court.

                                              BY THE COURT:

                                              _____
                                              JAMES McGIRR KELLY, J.